IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDON GONZALES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-3279-K |
| | § | |
| HUNT COUNTY SHERIFF'S | § | |
| DEPARTMENT, RANDY MEEKS, | § | |
| TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY, DAVID ARMSTRONG, and | § | |
| JANE DOE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendants Hunt County Sheriff's Department and Randy Meeks' Motion to Dismiss (Doc. No. 7); (2) Defendant David Armstrong's Partial Motion to Dismiss (Doc. No. 12); and (3) Defendants Hunt County Sheriff's Department and Randy Meeks' Objection to Plaintiff's Response (Doc. No. 18). For the following reasons, the Court **SUSTAINS** Defendants Hunt County Sheriff's Department and Randy Meeks' Objection to Plaintiff's Response and **disregards** Plaintiff Brandon Gonzales's Response to Defendants Hunt County Sheriff's Department and Randy Meeks' Motion to Dismiss, **GRANTS** Defendants Hunt

ORDER – PAGE 1

County Sheriff's Department and Randy Meeks' Motion to Dismiss, and **GRANTS**

Defendant David Armstrong's Partial Motion to Dismiss.

## I.     Factual Background

On October 26, 2019, Plaintiff Brandon Gonzales ("Plaintiff") attended an

after-party for the Texas A&M Commerce 2019 Homecoming at the Party Venue in

Greenville, Texas.  Compl. (Doc. No. 1) at 4, ¶4.  After paying the fee and entering,

Plaintiff observed that the venue was "packed to capacity", dark, and very hot.  *Id.* at

¶¶5-6.  Shortly after going inside, Plaintiff alleges he became too uncomfortable and

went to sit in his friend's car.  *Id.* at ¶¶7-8.  Plaintiff was still sitting in the car at some

point thereafter when he saw everyone "run out frantically" from inside the party *Id.*

at 4-5, ¶10.  When Plaintiff's friends got to the car, they immediately left together.  *Id.*

at ¶12.  Plaintiff alleges that during the time he was outside a shooting had occurred

inside the Party Venue which resulted in the death of two people and injuries to

fourteen others.  *Id.* at ¶11.

Two days later, on October 28, 2019, an unknown person identified as "Source

of Information" ("SOI" or "eyewitness") contacted Defendant Hunt County Sheriff's

Department to give a voluntary eyewitness account of the fatal shooting.  *Id.* at ¶20.

Accompanied by his/her attorney, the SOI gave a voluntary statement to Texas Ranger

Bruce Sherman, a non-party law enforcement officer.  *Id.*  The SOI also showed Ranger

Sherman pictures of the after-party and "drew a diagram of the Party Venue and chain of events that took place inside the party." *Id.* This information was included in the affidavit for an arrest warrant to be issued for Plaintiff. *Id.* The SOI was not identified in the affidavit due to safety concerns and the ongoing investigation; but the affiant swore that the SOI was a "credible witness as it related to information corroborated during the investigation." *Id.*

That same day, October 28, 2019, an arrest warrant issued and Defendant David Armstrong, a Texas Ranger with Defendant Texas Department of Public Safety, arrested Plaintiff as he arrived at his workplace. *Id.* at ¶14. Plaintiff was charged with Capital Murder related to the shooting at the Party Venue. *Id.* at 16. While in custody, Plaintiff alleges "several individuals" informed Defendant Hunt County Sheriff's Department that Plaintiff was innocent of the charges and the wrong person had been arrested. *Id.* at ¶17. Plaintiff also maintained his innocence while being interviewed by law enforcement. *Id.* at 6, ¶22. In statements to the media, Defendant Hunt County Sheriff's Department stated that the right person had been arrested "without a doubt". *Id.* at ¶¶21, 23. Defendant Randy Meeks, Hunt County Sheriff, claimed there was an eyewitness to the shooting (the unnamed SOI) who identified Plaintiff as the shooter. *Id.* at ¶24. Plaintiff alleges that the identity of the SOI has never been

ORDER – PAGE 3

made known, nor have any of the SOI's drawings, pictures, or statements been disclosed to Plaintiff. *Id.* at 6, ¶25.

On November 5, 2019, the charges against Plaintiff were dismissed because exculpatory evidence was allegedly discovered. *Id.* at ¶¶26, 27. The next day, November 6, 2019, Plaintiff was released from custody, nine days after being arrested. *Id.* at ¶26. Plaintiff alleges he suffered injuries as a result of his arrest, including the loss of his job, the inability to be rehired or find another job, and damage to his reputation and personal relationships. *Id.* at ¶¶29-36, 39-45. Plaintiff alleges these injuries continued to occur even after relocating to another state.

Plaintiff filed suit in this Court against Defendants Hunt County Sheriff's Department, Randy Meeks, Texas Department of Public Safety, David Armstrong, and Jane Doe. Plaintiff alleges the same federal and state claims against each Defendant— false arrest under 28 U.S.C. § 1983 and Texas common law, false imprisonment under § 1983 and Texas common law, malicious prosecution under § 1983 and Texas common law, abuse of process under § 1983 and Texas common law, and intentional infliction of emotional distress under Texas common law. Defendants Hunt County Sheriff's Department and Randy Meeks filed a joint Motion to Dismiss ("Motion"), and Defendant David Armstrong filed a Partial Motion to Dismiss ("Partial Motion"). These Motions are ripe for determination.

ORDER – PAGE 4

## II.    Legal Standards

In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  A well-pleaded complaint must allege facts upon which the claims are based and not be a conclusory recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff pleads a claim with facial plausibility when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable." *Id.*; *see Twombly*, 550 U.S. at 570 (facts as alleged must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible.").  The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

The Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit does allow the district court to consider documents attached to the motion to dismiss when those documents "are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *accord Collins*, 224 F.3d at 498–99.

## III.    Application of the Law to the Facts

The Court will address the motions to dismiss in turn.  First, the Court takes up Defendant Hunt County Sheriff's Department and Randy Meeks' Objection to Plaintiff's late-filed Response to their Motion.

### A.    Defendants Hunt County Sheriff's Department and Randy Meeks' Objection to Plaintiff's Response

Defendants Hunt County Sheriff's Department and Randy Meeks filed their Motion to Dismiss on December 8, 2020.  Plaintiff's responsive brief was due by December 29, 2020, pursuant to this Court's Local Rules.  *See* L.R. 7.1(e).  One day past his response deadline, Plaintiff filed a Motion to Extend Time to respond until January 16, 2021, stating, "Plaintiff's counsel needs more time to gather the necessary information to thoroughly respond to Motion."  Pl.'s Mot. (Doc. No. 13) at 1. Plaintiff's Certificate of Conference represented that "Plaintiff called [Defendants] at

4:00pm to discuss possible agreement" the same day Plaintiff's response was due.  *Id.* at 2.  Presumably Plaintiff's counsel was unable to confer with counsel for Defendants Hunt County Sheriff's Department and Randy Meeks because Plaintiff then stated that there is an "emergency" because the "[d]eadline to response [sic] is approaching." *Id.* at 2.  Before the Court ruled, Plaintiff filed an Amended Motion to Extend Time on January 6, 2021, which included a Certificate of Conference indicating counsel for Defendants Hunt County Sheriff's Department and Randy Meeks was unopposed to the requested extension of January 16, 2021.  Pl.'s Am. Mot. (Doc. No. 14) at 2.  The Court granted Plaintiff's motion giving him the requested extension of January 16, 2021.

On January 19, 2021, three days past his extended deadline, Plaintiff filed his Response (Doc. No. 17) to Defendants Hunt County Sheriff's Department and Randy Meeks' Motion to Dismiss.  Plaintiff did not seek leave of the Court to file his Response outside the deadline, Plaintiff did not secure Defendants Hunt County Sheriff's Department and Randy Meeks' agreement to file the Response later than the agreed-upon extension, and Plaintiff offered no explanation for this late filing.

In their Reply, Defendants Hunt County Sheriff's Department and Randy Meeks object to Plaintiff's Response as being untimely.  Reply (Doc. No. 18) at 1. Defendants Hunt County Sheriff's Department and Randy Meeks ask the Court to

ORDER – PAGE 7

disregard the Response in ruling on their Motion.  *Id.* at 2.  In light of the seriousness of that request, the Court ordered Plaintiff to respond to the Objection by February 10, 2021.  (Doc. No. 19).  Plaintiff did not file a response with the Court or attempt to contact the Court by February 10, 2021.  To-date, Plaintiff has not responded to the Court's order in any way.

Plaintiff offered no good cause or any other explanation for his late filed Response.  Moreover, Plaintiff wholly ignored a Court order directing him to respond to the Objection.  The Court has considered the options available for the conduct at issue.  *See, e.g.,* Fed. R. Civ. P. 41(b) (case may be involuntarily dismissed if plaintiff fails to comply with court order); *Boudwin v. Graystone Ins. Co., Ltd.,* 756 F.2d 399, 401 (5th Cir. 1985) ("Although [Rule 41(b)] speaks of dismissal pursuant to a motion by the defendant, a district court may dismiss *sua sponte,* with or without notice to the parties.").  The Court finds that the appropriate sanction for Plaintiff's failure to comply with the Court's order is to **sustain** Defendants Hunt County Sheriff's Department and Randy Meeks' objection to Plaintiff's Response and to disregard the Response in determining their Motion to Dismiss.  Any further failure by Plaintiff to comply with an order of this Court will result in the issuance of a show cause order.

Finally, the Court notes that in addition to Plaintiff's Response being untimely filed and Plaintiff failing to file a Court-ordered response, Plaintiff's counsel did not

sign the untimely Response.  In fact, there is not even a signature block—the Response simply ends with Section "V. Conclusion".  *See* Resp. at 11.  The Federal Rules of Civil Procedure very clearly require that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name" and "must include the signer's address, e-mail address, and telephone number."  FED. R. CIV. P. 11(a).  The Local Civil Rules of this Court likewise require counsel's signature.  L.R. 11.1.  <u>This Memorandum Opinion and Order hereby serves as notice to Plaintiff's counsel that any filings in this case, or any other before this Court, which are not signed in accordance with the applicable Federal and Local Civil Rules will be unfiled without further notice and regardless of any deadline which may be missed as a result.</u>  Furthermore, the Court may *sua sponte* issue a show cause order for any further errors and will consider all sanctions available accordingly.  FED. R. CIV. P. 11(c)(3) & (4).

### B. Defendants Hunt County Sheriff's Department and Randy Meeks' Motion to Dismission

Defendants Hunt County Sheriff's Department and Randy Meeks filed a joint Motion to Dismiss.  The Court will address each of those Defendants in turn.

### 1. Defendant Hunt County Sheriff's Department

Plaintiff asserts state and federal claims against Defendant Hunt County Sheriff's Department— false arrest under § 1983 ("Count I") and under Texas common law ("Count III"), false imprisonment under § 1983 ("Count V") and under Texas

common law ("Count VIII"), malicious prosecution under § 1983 ("Count XI") and under Texas common law ("Count XIV"), abuse of process under § 1983 ("Count XVII") and under Texas common law ("Count XIX"), and intentional infliction of emotional distress under Texas common law ("Count XXI").  Defendant Hunt County Sheriff's Department argues that all claims against it must be dismissed because it does not have a separate legal existence, so it may not be sued.

A plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence.  *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991).  The Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself."  *Id.*  "The sheriff's department of a Texas county is not a jural entity subject to suit."  *Williams v. Hunt Cty.*, Civ, Action No. 3:17-CV-3264-D-BN, 2018 WL 2031915, at *2 (N.D. Tex. Apr. 4, 2019), *adopted by*, 2018 WL 2018592 (N.D. Tex. May 1, 2018)(Fitzwater, J.).  Plaintiff fails to allege that Defendant Hunt County Sheriff's Department is a separate legal entity having jural authority.  *Williams*, 2018 WL 2031915, at *2 (finding Hunt County Sheriff's Department was not a jural entity).  Therefore, each of Plaintiff's claims against Defendant Hunt County Sheriff's Department must be dismissed.  *See Evans v.*

*Dallas County Sheriff*, 4 F.3d 991 (5th Cir. 1993) (affirming district court's dismissal of plaintiff's claim against Dallas County Sheriff's Department for failure to state a claim because Sheriff's Department does not have separate legal existence and cannot be sued); *Estate of Schroeder v. Gillespie Cty.*, 23 F.Supp.3d 775, 781 (W.D. Tex. 2014) (plaintiffs "failed to show Gillespie County ever granted the Sheriff's Department the legal capacity to engage in separate litigation); *Coates v. Brazoria Cty.*, 894 F.Supp.2d 966, 969 (S.D. Tex. 2012) (federal district courts in Texas have found that a county sheriff's department is not a public entity with jural authority); *Terry v. Detention Workers*, Civ. Action No. 3:21-CV-016-X-BH, 2021 WL 1725533, at *4 (N.D. Tex. Apr. 9, 2021) ("Dallas County Sheriff's Department is not a jural entity subject to suit."), *adopted by*, 2021 WL 1720221 (N.D. Tex. Apr. 29, 2021); *Amir-Sharif v. Valdez*, Civ. Action No. 3:06-CV-2258-P, 2007 WL 1791266, at *2 (N.D. Tex. June 6, 2007)(Solis, J.) (Dallas County Sheriff's Department does not have jural existence).

Having sustained the objection of Defendant Hunt County Sheriff's Department to Plaintiff's response, the Court does not consider the Response for purposes of deciding the Motion. However, even if the Court had considered it, Plaintiff makes no argument in his response to Defendant Hunt County Sheriff's Department Motion other than to summarily state that the Motion should be denied. Resp. (Doc. No. 17) at 2. In failing to respond to the arguments at all, the Court would

have found Plaintiff waived these issues. *Howley v. Bankers Standard Ins. Co.*, Civ. Action No. 3:19-CV-2477, 2021 WL 913290, at *7 (N.D. Tex. Mar. 10, 2021)(Lindsay, J.) (citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007)).  Plaintiff requests that if the Court chooses to grant the Motion, the claims be dismissed without prejudice and Plaintiff be given leave of Court to amend his complaint.  Resp. at 2. The Court would deny Plaintiff's "general curative amendment request" to amend as to Defendant Hunt County Sheriff's Department.  *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (leave to amend "is by no means automatic"); *accord Willard ex rel. v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* FED. R. CIV. P. 7(b)— does not constitute a motion within the contemplation of Rule 15(a).").  Moreover, this court has already found Defendant Hunt County Sheriff's Department is not a jural entity and, therefore, cannot be sued.  *Williams*, 2018 WL 2031915, at *2 (finding Hunt County Sheriff's Department was not a jural entity).  Therefore, any amendment would be futile.  *See Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–91 (5th Cir. 2016) (even if sufficient specificity was provided, court may deny leave where amendment would be futile).

ORDER – PAGE 12

For these reasons, Plaintiff's claims against Defendant Hunt County Sheriff's Department are dismissed with prejudice.

### 2.   Defendant Randy Meeks

Defendant Meeks moves to dismiss each of Plaintiff's claims against him— false arrest under § 1983 ("Count I") and under Texas common law ("Count III"), false imprisonment under § 1983 ("Count V") and under Texas common law ("Count VIII"), malicious prosecution under § 1983 ("Count XI") and under Texas common law ("Count XIV"), abuse of process under § 1983 ("Count XVII") and under Texas common law ("Count XIX"), and intentional infliction of emotional distress under Texas common law ("Count XXI").  Defendant Meeks argues that §§ 101.106(f) and 101.057(2) of the Texas Tort Claims Act (the "TTCA") requires all the state claims against him be dismissed.  Defendant Meeks argues that he is entitled to qualified immunity for the federal claims of malicious prosecution abuse of process, false arrest, and false imprisonment.  The Court previously explained that Plaintiff's Response will not be considered in the Court's determination of the Motion.  However, even if the Court had considered it, the outcome would nevertheless remain the same.

### a.   State Law Claims

"The Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages."  *Mission Consol.*

ORDER – PAGE 13

*Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing TEX. CIV. PRAC. &

REM. CODE § 101.023).  The TTCA "is the only, albeit limited, avenue for common-

law recovery against the government," all tort claims alleged against a governmental

entity alone or with its employee are brought under the TTCA for purposes of

§ 101.106(f), even if immunity is not waived under the TTCA.  *Id.* at 659; *accord*

*Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014); *see also Rivera v. Garcia*, 589

S.W.3d 242, 246 (Tex. App.—San Antonio, 2019) ("[c]ould have been brought"

applies to all tort claims even where immunity not waived under TTCA).  The TTCA

contains an "Election of Remedies" provision that requires the plaintiff to elect

"between suing a governmental unit and suing an employee of that unit."  *Bustos v.*

*Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010).  In other words, the plaintiff

must "decide at the outset whether an employee acted independently and is thus solely

liable, or acted within the general scope of his or her employment such that the

governmental unit is vicariously liable," as provided by state statute.  *Garcia*, 253

S.W.3d at 657 & n.3 (citing §§ 104.001, 104.002).  Pursuant to the election provision

of the TTCA, "recovery against an individual employee is barred and may be sought

against the governmental unit only . . . (3) when suit is filed against an employee whose

conduct was within the scope of his or her employment and the suit could have been

brought against the governmental unit."  *Id.* at 657 (citing § 101.106(f)).  "By adopting

section 101.106(f), the Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct." *Garza v. Harrison*, 574 S.W.3d 389, 393 (Tex. 2019); *id.* at 399-400 ("[S]ection 101.106(f) essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the governmental employer."). Defendant Meeks argues that Plaintiff's allegations complain of actions taken by Defendant Meeks in his official capacity and the claims must all be dismissed under § 101.106(f). The Court agrees.

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." § 101.001(5). "The dispositive question is: In what capacity was the officer acting at the time he committed the acts for which the complaint was made?" *Rivera*, 589 S.W.3d at 246. "An official acts within the scope of [his] authority if [he] is discharging duties generally assigned to [him]." *Carter v. Diamond URS Huntsville, LLC*, 175 F.Supp.3d 711, 751 (S.D. Tex. 2016) (internal citation omitted); *id.* ("This principle holds true even if the law enforcement officer acts partly to serve his or her own interests and allegedly commits tortious acts."). Moreover, even if the governmental employee's actions "were conducted with improper motives," his conduct

ORDER – PAGE 15

may "remain within the general scope of duties" related to his employment. *Id.* at 752. "[T]he employee's state of mind, motives, and competency are irrelevant; the sole focus is on the actions of the employee." *Rivera*, 589 S.W.3d at 246 (citing *Garza*, 574 S.W.3d at 400).

The first prong of § 101.106(f) is satisfied in that Plaintiff filed suit against Defendant Meeks, a governmental employee, based on conduct within the scope of his employment.  § 101.106(f); *see Garcia*, 253 S.W.3d at 657.  Defendant Meeks, as the Hunt County Sheriff, was an employee of Hunt County at the time of the alleged incident.  Compl. at 4, ¶3; 6, ¶23; *see Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011) (threshold issue is whether individual defendants are "employees of a governmental unit" such that § 101.106(f) applies).  Plaintiff clearly alleges in his Complaint that Defendant Meeks "acted under the color of law as law enforcement officer," within the scope of his employment, "[a]t all times" with respect to the alleged actions giving rise to these state claims.  Compl. at 10, ¶68; 15, ¶109; 21, ¶173; 27, ¶227; 29, ¶249; *see also id.* at 6, ¶¶23 & 24.  As Hunt County Sheriff, Defendant Meeks was acting within the general scope of his duties when he spoke with media outlets, as Plaintiff alleges, and "doubled-down on his assertion" that the right person had been arrested and that there was an eyewitness who identified Plaintiff as the shooter. Compl. at 6, ¶¶23-24; *Rivera*, 589 S.W.3d at 249 ("An officer's scope of employment

includes the activities performed in his role as officer, including investigating, arresting, and answering media inquiries."). Therefore, based on Plaintiff's allegations in his Complaint, Defendant Meeks was acting within the scope of his employment in his official capacity at the time of the complained-of conduct. *See* § 101.001(5); *Rivera*, 589 S.W.3d at 246; *Carter*, 175 F.Supp.3d at 751

The second prong of § 101.106(f) is also satisfied in that Plaintiff's claims could have been brought under the TTCA against Hunt County, as the employing governmental unit. § 101.106(f); *see Garcia*, 253 S.W.3d at 657. "A suit against a governmental employee in an official capacity is effectively a suit against the employing governmental unit" with a limited exception. *Garza*, 574 S.W.3d at 399. Therefore, a suit against a public employee in his official capacity is treated as a suit against the governmental unit itself. *Garza*, 574 S.W.3d at 399. Plaintiff asserts state claims against Defendant Meeks for false arrest, false imprisonment, malicious prosecution, abuse of process, and intentional infliction of emotional distress, which are all intentional torts. *Alexander*, 435 S.W.3d at 792 (false arrest, false imprisonment, and malicious prosecution are tort claims); *Stinson v. Fontenot*, 435 S.W.3d 793 (Tex. 2014) (intentional infliction of emotional distress is tort claim); *Moore v. Bushman*, 559 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (abuse of process is tort claim); *see Travis v. City of Grand Prairie*, 654 F. App'x 161, 167 (5th Cir. 2016).

ORDER – PAGE 17

As intentional torts, these claims could have been brought under the TTCA against Hunt County, his employing governmental unit. *See Alexander*, 435 S.W.3d at 792 (all "tort claims against the government are brought under this chapter the TTCA" for purposes of § 101.106(f) even if immunity was not waived under the TTCA).

When an employee was acting within the general scope of his employment and suit could have been brought under TTCA against the governmental unit, "the suit 'is considered to be against the employee in the employee's official capacity only', and, upon the employee's motion, the plaintiff must promptly dismiss the employee and sue the government instead." *Franka*, 332 S.W.3d at 381 (quoting § 101.106(f)); *accord Garza*, 574 S.W.3d at 399 ("[B]ecause an official-capacity suit against a public employee is merely another way of pleading an action against the governmental employer, on the employee's motion, section 101.106(f) compels an election that makes suit against the governmental employer the exclusive remedy for a public employee's conduct within the scope of employment."). Once Defendant Meeks moved to dismiss pursuant to § 101.106(f), Plaintiff had two choices: (1) dispute that Defendant Meeks acted in his official capacity and ask the Court to deny the Motion thereby allowing him to pursue his claims against Defendant Meeks individually; or (2) amend his Complaint to name Hunt County, the governmental unit that is Defendant Meeks' employer, and pursue his claims against it, thereby ending his case

ORDER – PAGE 18

against Defendant Meeks.  *Texas Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 360 (Tex. 2013).  Plaintiff did neither.

Even if the Court were to have considered Plaintiff's Response, the outcome would not change.  Plaintiff wholly fails to address § 101.106(f), let alone argue that it does not apply to Defendant Meeks in this action.   Plaintiff makes no argument disputing that Defendant Meeks acted in his official capacity.   Plaintiff also did not seek leave to amend his Complaint to dismiss Defendant Meeks and name the relevant governmental entity as a defendant.   Instead, Plaintiff addresses only qualified immunity.   Plaintiff conflates the statutory   immunity under § 101.106(f), which prevents a government employee acting within scope of his employment from being liable for state tort claims that could have been brought against the government, with qualified immunity that is an affirmative defense which applies in the context of federal § 1983 claims to bar the government employee's individual liability.  *See Garza*, 574 S.W.3d at 399-400 (statutory immunity under § 101.106(f) is not to be confused with official immunity which is an affirmative defense); *see also Crostley v. Lamar Cty., Tex.*, 717 F.3d 410, 424 (5th Cir. 2013) (internal quotations omitted) ("Texas law of official immunity is substantially the same as federal qualified immunity.").

Section 101.106(f) "furthers one of the primary purposes of both the TTCA generally and section 101.106 in particular—to protect governmental employees acting

the scope of employment." *Ngakoue*, 408 S.W.3d at 357; *see Franka*, 332 S.W.3d at 384-85 (Texas legislature intended this precise effect with the passage of § 101.106 which is "to discourage or prevent recovery against an employee" from tort claims arising from actions taken within the scope of employment).  For these reasons, Plaintiff's state claims against Defendant Meeks must be dismissed upon his Motion. § 101.106(f) ("On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unity as defendant on or before the 30th day after the date the motion is filed."); *see Ngakoue*, 408 S.W.3d at 360 ("[S]ection 101.106's election scheme favors the expedient dismissal of governmental employees when suit should have been brought against the government.").  Because dismissal of these state claims is required under § 101.106(f), the Court need not address Defendant Meek's alternative argument that dismissal is appropriate under § 101.057(2).

The Court dismisses the state claims against Defendant Meeks with prejudice as a matter of law.  *See Jimerson v. Lewis*, Civ. Action No. 3:20-CV-2826-L-BH, 2021 WL 1561431, at *1 n.2 (N.D. Tex. April 21, 2021)(Lindsay, J.) (because plaintiff did not amend complaint within time prescribed by § 101.106(f), employee defendants entitled to dismissal with prejudice as a matter of law as to the state tort claims).

b.      Federal Claims

Defendant Meeks argues that the federal claims asserted against him under § 1983—false arrest, false imprisonment, malicious prosecution, and abuse of process— must also be dismissed because he is entitled to qualified immunity.  The Court agrees.

To state a claim under § 1983, a plaintiff must show a government official, acting under color of state law, "depriv[ed] him 'of any rights, privileges, or immunities secured by the Constitution.'"  *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020). Section 1983 does not create any substantive rights; it simply provides a remedy for certain designated rights, so "an underlying constitutional or statutory violation is a predicate to liability."  *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).  The court employs a two-step analysis in deciding the applicability of qualified immunity: (1) whether the plaintiff alleged facts which "make out a violation of a constitutional right" and, only if that is satisfied, (2) whether that constitutional right was "'clearly established' at the time of defendant's alleged misconduct."  *Pearson*, 555 U.S. at 232. When a defendant invokes the defense of qualified immunity at the motion to dismiss stage, the plaintiff must show that defense is inapplicable by "plausibly alleg[ing] a violation of a constitutional right that was clearly established at the time of the purported violation."  *Morgan*, 969 F.3d at 245.

ORDER – PAGE 21

1)      Malicious Prosecution and Abuse of Process

The Fifth Circuit recently reaffirmed that, in this Circuit, there is no "constitutional right to be free from malicious prosecution." *Morgan*, 969 F.3d at 245 (citing *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003)(en banc) as having "extinguished the constitutional malicious-prosecution theory); *accord Arnold v. Williams*, 979 F.3d 262, 270 (2020); *see Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (held that "a freestanding 42 U.S.C. § 1983 claim based solely on malicious prosecution [is] not viable."). Plaintiff must instead "allege that officials violated specific constitutional rights in connection with a 'malicious prosecution.'" *Cuadra*, 626 F.3d at 812 (quoting *Castellano*, 352 F.3d at 945). "[F]acts amounting to malicious prosecution are properly alleged as part of an actual Fourth Amendment claim, such as unreasonable search or seizure." *Arnold*, 979 F.3d at 270 (2020). In his Complaint, Plaintiff did not allege any such constitutional violations. *See, e.g., Morgan*, 969 F.3d at 245-46 ("In so far as the defendant's bad actions (that happen to correspond to the tort of malicious prosecution) result in an unreasonable search or seizure, those claims may be asserted under § 1983 as violations of the Fourth Amendment."). In fact, as alleged in his Complaint, Plaintiff's claim under § 1983 for malicious prosecution recites the required allegations of that state tort claims. *See Kroger Texas Ltd. v. Suberu*, 216 S.W.3d 788, 792 (Tex. 2006); *Brown v. City of Houston*,

297 F.Supp.3d 748, 760 (S.D. Tex. 2017) (quoting *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2001, no pet.)).  Plaintiff's claim for malicious prosecution is not cognizable under § 1983 without allegations of an underlying constitutional violation.  *See id.* at 246.  Accordingly, Defendant Meeks is entitled to qualified immunity on Plaintiff's § 1983 malicious prosecution claim.  *See id.* (plaintiff must plausibly allege a violation of a constitutional right).

Plaintiff's claim for abuse of process under § 1983 suffers the same fate.  The Fifth Circuit specifically held that "there is no constitutional right be to to be free from abuse of process."  *Id.* (noting that it is "doubtful" a constitutional tort of abuse of process "ever existed in this circuit".)  As with malicious prosecution, "facts that constitute the state tort of abuse of process can also constitute an unreasonable search, unreasonable seizure, or violation of another right 'locatable in constitutional text.'. . . But those claims 'are not claims for abuse of process and labeling them as such only invites confusion.'"  *Id.* at 247 (quoting *Castellano*, 352 F.3d at 954).  If Plaintiff's claim was "rooted in the violation of [his] constitutional rights," then it would be viable under § 1983.  *Id.*  However, Plaintiff did not plausibly allege the violation of any "right locatable in constitutional text."  *Id.*  Again, as with the malicious prosecution claim, Plaintiff's recites the required allegation for the state tort claim of abuse of process, not that claim under § 1983.  *See Suberu*, 216 S.W.3d at 792; *Brown*, 297 F.Supp.3d at 760

(quoting *Hunt*, 68 S.W.3d at 129).   Accordingly, Defendant Meeks is entitled to qualified immunity on this claim under § 1983 for abuse of process.

2)   False Arrest and False Imprisonment

Defendant Meeks contends Plaintiff did not sufficiently plead his claims under § 1983 for false arrest and false imprisonment because Plaintiff did not plausibly allege that he was deprived of a constitutional right as to these claims.   Therefore, Defendant Meeks argues he is entitled to qualified immunity.

"The constitution does not guarantee that only the guilty will be arrested." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982).   "[T]o state a § 1983 claim for false arrest/false imprisonment, [the plaintiff] must plausibly allege that [the defendant] 'did not have probable cause to arrest him.'" *Arnold*, 979 F.3d at 269 (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)).   Plaintiff does not dispute that he was arrested pursuant to an arrest warrant issued upon an affidavit.   Compl. at 5, ¶20. But, as Plaintiff alleges, Defendant David Armstrong was the arresting officer, not Defendant Meeks.   Compl. at 5, ¶15; *cf. Malley v. Briggs*, 475 U.S. 335, 344 (1986) (explaining limited occasion in which officer executing the warrant could be liable).   As he was not the arresting officer, there are limited scenarios under which Defendant Meeks could be liable for false arrest or false imprisonment.

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019); *see also Gonzales*, 670 F.2d at 526 ("Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest.  Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim.").  But, even if an independent magistrate approves a warrant application, the affiant may still be liable for false arrest if "(1) the affiant, in support of the warrant, includes a 'false statement knowingly and intentionally, or with reckless disregard for the truth,' and (2) the allegedly false statement is necessary to the finding of probable cause." *Arizmendi*, 919 F.3d at 897 (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). For such liability to attach, the defendant officer must have "assisted in the preparation of, or otherwise presented or signed a warrant application." *Ulrich v. City of Shreveport*, 765 F. App'x 964, 967 (5th Cir. 2019) (quoting *Melton v. Phillips*, 875 F.3d 256, 263 (5th Cir. 2017)(en banc)).

Plaintiff alleges that an arrest warrant issued upon an affidavit that included information provided to "Ranger Sherman of the Texas Rangers" by the SOI.  Compl. at 5, ¶20.  Plaintiff does not allege the identity of the affiant, *see, e.g.,* Compl., at 5-6,

¶¶19, 20, 25, but does allege that both his attorneys received the "Affidavit for Arrest Warrant" from "the prosecutor" upon a request for "pre-indictment discovery". *Id.* at 5, ¶18-19.   Defendant Meeks attached a copy of this probable cause affidavit ("Affidavit") and the arrest warrant to his Motion.  App. in Support of Mot. ("App.") (Doc. No. 8) at 3-5.  The Court considers these documents because they are central to Plaintiff's claim for false arrest.  *See Anokwuru v. City of Houston*, 990 F.3d 956, 963 (5th Cir. 2021) (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents.").

Plaintiff does not allege that Defendant Meeks was responsible for preparing the warrant application or deliberately or recklessly providing false information for use in it.  *See Melton*, 875 F.3d. at 263-64.  A review of the Affidavit confirms that Defendant Meeks was not the affiant of the Affidavit.  Texas Ranger Laura Simmons, a non-party to this case, was the initiating party who swore to the Affidavit in support of the arrest warrant application for Plaintiff.  App, at 3-5; *see Arizmendi*, 919 F.3d at 897 (outlining exception to "independent intermediary" rule where affiant may still be liable for false arrest).  A district court judge in Hunt County then signed the arrest warrant.  App. at 2; *see Arizmendi*, 919 F.3d at 897 (well-established that "independent intermediary" rule

ORDER – PAGE 26

"breaks chain of causation for false arrest."). Texas Ranger Bruce Sherman met with and interviewed the SOI and also took the SOI's statement. App. at 3. In the Affidavit, Texas Ranger Simmons does not indicate Defendant Meeks provided or assisted with any information sworn to in the Affidavit. Instead, it was the information from Texas Ranger Sherman on which Texas Ranger Simmons relied on and swore to in the Affidavit in seeking the arrest warrant. Plaintiff does not allege that Defendant Meeks helped prepare the affidavit by providing information used in it. *See Ulrich*, 765 F. App'x at 967 (defendant officer can be liable only where he "assisted in the preparation of, or otherwise presented or signed a warrant application."); *Melton*, 875 F.3d at 263.

Merely alleging he was arrested without probable cause does not suffice on a Rule 12(b)(6) determination. Without "additional government acts that may attend the initiation of a criminal charge", the Fifth Circuit has held that "causing charges to be filed without probable cause will not without more violate the Constitution." *Castellano*, 352 F.3d at 953. It is that "more" which is missing; Plaintiff did not plausibly allege that he was arrested without probable cause. *See Arnold*, 979 F.3d at 269.

Plaintiff does allege that Defendant Meeks "knowingly created the existence of a confidential informant in furtherance of the conspiracy to false arrest and imprisonment [sic] Brandon Gonzales." Compl. at 7, ¶37. However, there are no other

allegations related to any conspiracy. "[Plaintiff's] mere characterization of [Defendant Meeks'] conduct 'as conspiratorial or unlawful does not set out allegations upon which relief can be granted.'" *Russell v. Millsap*, 781 F.2d 381, 383 (5th Cir. 1985) (§ 1983 claims). Without any factual allegations in support of an alleged conspiracy, this mere conclusory allegation does not suffice to meet Plaintiff's pleading burden to survive dismissal. *See Iqbal*, 556 U.S. at 678; *see Kane Enters.*, 322 F.3d at 374 (plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim).

The claim for false imprisonment under § 1983 also requires Plaintiff to "plausibly allege that [the defendant] 'did not have probable cause to arrest him.'" *Arnold*, 979 F.3d at 269 (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). The aforementioned applicable law and the Court's analysis regarding false arrest applies with equal force to Plaintiff's false imprisonment claim. Just as he failed to plausibly allege a claim for false arrest, Plaintiff failed to plausibly allege a claim under § 1983 for false imprisonment against Defendant Meeks.

For these reasons, Defendant Meeks is entitled to qualified immunity on the claims under § 1983 for false arrest and false imprisonment. *See Morgan*, 969 F.3d at 245 (plaintiff must allege he was deprived of constitutional right to sufficiently state a

claim under § 1983); *see also Pearson*, 555 U.S. at 232 (to overcome qualified immunity defense, plaintiff must allege facts that "make out a violation of a constitutional right").

3)      Plaintiff's Response

As previously explained, the Court did not consider Plaintiff's Response in the determination of this Motion; but, even if it had, the outcome would not change.  First, Plaintiff wholly failed to address Defendant Meeks' argument that the claims for malicious prosecution and abuse of process are not viable federal claims as alleged. Also, to defeat Defendant Meeks' qualified immunity defense at this stage, Plaintiff "must plausibly allege a violation of a constitutional right that was clearly established at the time of the purported violation." *Morgan*, 969 F.3d at 245; *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.").  Plaintiff failed to meet this burden.  In his Complaint, Plaintiff alleges that probable cause was lacking.  But, as previously explained, Plaintiff does not plead facts that allow the Court to reasonably infer that Defendant Meeks is liable for the alleged misconduct related to false arrest and false imprisonment under § 1983.  *See Castellano*, 352 F.3d at 953 (without "additional government acts that may attend the initiation of a criminal charge", even the act of "causing charges to be filed without probable cause will not without more violate the Constitution.").  And Plaintiff's

ORDER – PAGE 29

Response does nothing to remedy this, nor could it.  *See Staten v. City of Dallas*, Civ. Action No. 3:19-CV-0843-L-BN, 2020 WL 1902573, at *6 (N.D. Tex. Jan. 17, 2020) *adopted by* 2020 WL 548373 (N.D. Tex. Feb. 4, 2020)(Lindsay, J.) ("[A] plaintiff may not amend his allegations through a response to a motion to dismiss. 'A claim for relief' must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the 'pleadings that are allowed' under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a).").

Plaintiff fails to plausibly allege a violation of his constitutional rights related to the claims under § 1983 for malicious prosecution, abuse of process, false arrest, and false imprisonment.  *See Pearson*, 555 U.S. at 232 (the court must first decide whether the plaintiff has alleged facts that "make out a violation of a constitutional right."); *Morgan*, 969 F.3 at 245.  Therefore, Defendant Meeks is entitled to qualified immunity as to these federal claims.

<u>c.</u>    Conclusion

The Court finds that the state claims against Defendant Meeks must be dismissed pursuant to § 101.106(f) of the TTCA.  The Court also finds that Defendant Meeks is entitled to qualified immunity on the claims under § 1983 for malicious prosecution, abuse of process, false arrest, and false imprisonment.  For these reasons, Defendant Meeks' Motion to dismiss is **granted**.  The state claims asserted against him

ORDER – PAGE 30

are hereby dismissed with prejudice—false arrest (Texas common law), false imprisonment (Texas common law), malicious prosecution (Texas common law), abuse of process (Texas common law), and intentional infliction of emotional distress (Texas common law). The federal claims asserted against Defendant Meeks are hereby dismissed without prejudice—malicious prosecution (§ 1983), abuse of process (§ 1983), false arrest (§ 1983), and false imprisonment (§ 1983).

## C.   Defendant David Armstrong's Partial Motion to Dismiss

Defendant David Armstrong filed a Partial Motion to dismiss certain claims brought against him—false arrest under Texas common law (Count IV), false imprisonment under Texas common law (Count IX), malicious prosecution under § 1983 (Count XII) and under Texas common law (Count XV), abuse of process under § 1983 (Count XVIII) and under Texas common law (Count XX), and intentional infliction of emotional distress under Texas common law .Count XXII). Defendant Armstrong argues that each of the state claims must be dismissed pursuant to §§ 101.106(e) and 101.057(2) of the TTCA. Defendant Armstrong also contends that the federal claims for malicious prosecution and abuse of process are not viable claims under § 1983 and, therefore, he is entitled to qualified immunity. In response, Plaintiff argues that "the exception to this qualified immunity [under the TTCA] is a person's constitutional rights that [sic] can not [sic] be trumped by Statute." Resp. (Doc. No.

16) at 4.  Citing a Fifth Circuit case, Plaintiff responds that "the qualified immunity defense is inapplicable where one's constitutional rights have been violated."  *Id.*  Defendant Armstrong did not file a reply.

Just as with his untimely Response to Defendant Hunt County Sheriff's Department and Defendant Meeks' Motion, Plaintiff's counsel did not sign or include a signature block on the Response to Defendant Armstrong's Partial Motion—it simply ends with Section "V. Conclusion".  *Id.* at 9; *see* Fed. R. Civ. P. 5(d)(3); L.R. 11.1.  <u>Again, Plaintiff's counsel is hereby put on notice that any future filings in this case, or any other before this Court, which are not formatted and filed in accordance with the applicable Federal or Local Civil Rules will be unfiled without further notice and regardless of any deadline which may be missed as a result.</u>

### 1.    State Claims

Plaintiff sued both Defendant Texas Department of Public Safety and its employee Defendant Armstrong.   As explained in Section III.B.2.a addressing Defendant Meeks' Motion, the "Election of Remedies" provision of the TTCA requires the plaintiff to elect "between suing a governmental unit and suing an employee of that unit." *Bustos*, 599 F.3d at 462.  In other words, the plaintiff must "decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously

liable," as provided by state statute. *Garcia*, 253 S.W.3d at 657 & n.3 (citing §§ 104.001, 104.002). The Election of Remedies provision of § 101.106 "favors the expedient dismissal of governmental employees when suit should have been brought against the government." *Garza*, 574 S.W.3d at 399.

In his Partial Motion, Defendant Armstrong moves the Court to dismiss the state claims against him pursuant to § 101.106(e) which provides: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." § 101.106(e). Even though subsection (e) would require dismissal of Defendant Armstrong, that dismissal can be accomplished only upon "the filing of a *motion by the governmental unit*." § 101.106(e) (emphasis added). By the statute's clear language, Defendant Armstrong's own motion cannot trigger his dismissal under § 101.106(e). The Texas Supreme Court has suggested that subsection (f) is "the appropriate avenue for dismissal of an employee who is considered to have been sued in his official capacity." *Alexander*, 435 S.W.3d at 791 (citing *Ngakoue*, 408 S.W.3d at 357-58); *accord Stinson*, 435 S.W.3d at 794. But Defendant Armstrong did not move for dismissal under subsection (f) and the Court will not consider that argument *sua sponte* because a motion under § 101.106(f) permits the plaintiff an opportunity to amend his pleadings within 30 days. § 101.106(f) ("On the employee's motion, the

suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.").  The Court must deny Defendant Armstrong's Partial Motion to dismiss the state claims under § 101.106(e).

Although the Partial Motion is denied on that basis, the Court finds the Partial Motion must be granted on the alternative basis that governmental immunity has not been waived for these intentional tort claims under the TTCA.  "A suit against a governmental employee in an official capacity is effectively a suit against the employing governmental unit." *Garza*, 574 S.W.3d at 399; *see Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996) (suit against county official in his official capacity is suit against county "directly in everything but name").  In this case, Plaintiff clearly alleges that he is suing Defendant Armstrong in his official capacity, as he "acted under the color of law as a law enforcement officer, of and with the authority of, the Defendant Texas Department of Public Safety." *See,* Compl. at 11, ¶75; 16, ¶119; 22-23, ¶185; 28, ¶240; 30, ¶262. Because Plaintiff's suit against Defendant Armstrong is in his official capacity, the Court treats this as a suit against the governmental entity itself. *Garza*, 574 S.W.3d at 399.

"[A]n employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer." *Franka*, 332 S.W. 3d at 382-83.

ORDER – PAGE 34

It is well-established in Texas that "a governmental unit is immune from tort liability unless the Legislature has waived immunity." *Dallas County Mental Health & Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). While the TTCA provides limited waiver of governmental immunity in certain suits, that waiver does not apply to claims "arising out of assault, battery, false imprisonment, or any other intentional tort[.]" § 101.057(2); *see* § 101.021; *Garcia*, 253 S.W.3d at 655. Plaintiff's state claims against Defendant Armstrong are intentional torts. *See Alexander*, 435 S.W.3d at 792 (false arrest, false imprisonment, and malicious prosecution are tort claims); *Stinson*, 435 S.W.3d 793 (intentional infliction of emotional distress is tort claim); *Moore*, 559 S.W.3d at 653 (abuse of process is tort claim); *see Travis*, 654 F. App'x at 167. Plaintiff did not allege a waiver of immunity and it does not appear from his Complaint that any waiver applies. *See* § 101.021-022 (limited waiver of immunity where claims arise from the use of a motor-driven vehicle, a condition or use of tangible personal property, or a premise defect).

Plaintiff's Response does not save his claims from being barred. Plaintiff acknowledges that "[n]ormally, the Texas Tort Claims Act excludes waiver of immunity under state law on all claims arising out of intentional torts." Resp. at 4. However, Plaintiff goes on to argue that the "exception" to this "qualified immunity" under the TTCA "is a person's constitutional rights that [sic] can not be trumped by Statute."

*Id.*  Plaintiff appears to conflate, or misunderstand, the immunity defenses at issue—sovereign immunity that has not been waived under the TTCA in the context of the state claims for intentional torts as opposed to qualified immunity which is an affirmative defense applicable to the federal claims arising under § 1983.  They are separate and distinct from one another, yet Plaintiff's Response refers only to qualified immunity.  Plaintiff wholly fails to address the unambiguous language of the TTCA that does not waive immunity as to those state claims for intentional torts.  Plaintiff also completely fails to dispute that Defendant Armstrong, as being sued in his official capacity, enjoys derivative governmental immunity which bars those state claims. § 101.057(2).  Plaintiff makes no argument based in applicable law that his claims as alleged in the Complaint overcome this sovereign immunity under the TTCA.  Plaintiff did not meet his burden.

The government's immunity from Plaintiff's claims for intentional torts has not been waived under the TTCA and Defendant Armstrong, being sued in his official capacity, enjoys that immunity.  *Franka*, 332 S.W. 3d at 382-83; *McHenry v. Stinnett Police Dep't*, Civ. Action No. 2:13-CV-0228-J, 2014 WL 4805678, at *4 (N.D. Tex. July 29, 2014)(Robinson, J.) (plaintiff's state claims for intentional torts against defendant in his official capacity were barred by sovereign immunity because immunity

was not waived under TTCA for intentional tort claims).  Accordingly, these claims are barred and dismissed with prejudice.

>    2.    **Federal Claims—Malicious Prosecution and Abuse of Process**

Applying the applicable law and the Court's analysis set forth in Section III.B.2.b.1 as to Defendant Meeks' Motion, Plaintiff's claims against Defendant Armstrong for malicious prosecution and abuse of process pursuant to § 1983 are not viable federal claims as alleged in his Complaint.  Neither claim is recognized as being rooted in a constitutional right.  *Morgan*, 969 F.3d at 246 ("There is no constitutional right to be free from malicious prosecution. Therefore, qualified immunity bars [plaintiff's] § 1983 malicious prosecution claims against [defendants]."); *id.* at 247 ("Because there is no constitutional right to be free from abuse of process, the district court erred by failing to grant defendants qualified immunity on that claim.").  When these claims are brought under § 1983, the plaintiff must allege the violation of a right "locatable in constitutional text." *Castellano*, 352 F.3d at 954).  As contained in his Complaint, Plaintiff's allegations do not implicate the violation of any constitutional right.  *See Cuadra*, 626 F.3d at 812 (the plaintiff must "allege that officials violated specific constitutional rights in connection with a 'malicious prosecution.'"); *Arnold*, 979 F.3d at 270 ("[F]acts amounting to malicious prosecution are properly alleged as part of an actual Fourth Amendment claim, such as unreasonable search or seizure.");

ORDER – PAGE 37

*see also Morgan*, 969 F.3d at 247.  In fact, as alleged in his Complaint, Plaintiff's claims for both malicious prosecution and abuse of process under § 1983 recite the required allegations of those state tort claims.  *See Suberu*, 216 S.W.3d at 792; *Brown*, 297 F.Supp.3d at 760 (quoting *Hunt*, 68 S.W.3d at 129).  In his Complaint, Plaintiff failed to plausibly allege claims for both malicious prosecution and abuse of process under § 1983.  *See Twombly*, 550 U.S. at 570 (plaintiff must plead "enough facts to state a claim to relief that is plausible on its face.").  Defendant Armstrong is, therefore, entitled to qualified immunity on those claims.  *See Morgan*, 969 F.3d at 245 (plaintiff "must plausibly allege a violation of a constitutional right that was clearly established at the time" to defeat defendant's entitlement to qualified immunity).

For the first time in his Response, Plaintiff cites to various constitutional rights, both state and federal.  However, this effort does nothing to save these claims from dismissal.  In deciding a motion to dismiss under Rule 12(b)(6), the Court considers only "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V*, 594 F.3d at 387.  It is well-established that Plaintiff may not amend his allegations through his Response to the Motion.  *See Staten*, 2020 WL 1902573, at *6  ("[A] plaintiff may not amend his allegations through a response to a motion to dismiss. 'A claim for relief' must be made through a pleading, FED. R.

ORDER – PAGE 38

Cɪᴠ. P. 8(a), and a response to a motion is not among the 'pleadings that are allowed' under the Federal Rules of Civil Procedure, Fᴇᴅ. R. Cɪᴠ. P. 7(a).").  Even so, Plaintiff makes no discernable argument between any of the constitutional provisions he cites in his Response and the factual allegations in his Complaint with respect to these federal claims.

The Court concludes Defendant Armstrong is entitled to qualified immunity on these claims under § 1983 for malicious prosecution and abuse of process.

### 3.  Conclusion

The Court finds that Defendant Armstrong, having been sued in his official capacity, is entitled to derivative governmental immunity from his employer on each of the state claims against him because immunity was not waived under the TTCA for those intentional torts.  The Court also finds that Defendant Armstrong is entitled to qualified immunity on the claims for malicious prosecution and abuse of process under § 1983 because Plaintiff failed to plausibly allege a violation of a constitutional right. For these reasons, Defendant Armstrong's Partial Motion to dismiss is **granted**.  The Court dismisses with prejudice the claims against Defendant Armstrong under Texas common law for false arrest, false imprisonment, malicious prosecution, abuse of process, and intentional infliction of emotional distress.  The Court dismisses without prejudice the claims against Defendant Armstrong under § 1983 for malicious

prosecution and abuse of process.  Defendant Armstrong did not move to dismiss the federal claims under § 1983 for false arrest and false imprisonment; therefore, these claims remain pending against Defendant Armstrong.

IV.    **Conclusion**

For the foregoing reasons, the Court **grants** Defendant Hunt County Sheriff's Department and Defendant Randy Meeks' Motion to Dismiss.  All claims against Defendant Hunt County Sheriff's Department are **dismissed with prejudice**.  As against Defendant Meeks, all state claims are **dismissed with prejudice** and the federal claims are **dismissed without prejudice**.

Also for the foregoing reasons, the Court **grants** Defendant David Armstrong's Partial Motion to Dismiss.  Each of Plaintiff's state claims against Defendant Armstrong is **dismissed with prejudice**.  The federal claims against Defendant Armstrong for malicious prosecution and abuse of process are **dismissed without prejudice**.

All other relief not expressly granted herein is **denied**.  If Plaintiff wishes to amend his Complaint, he must submit a motion for leave to amend his Complaint that complies with the applicable Federal Rules of Civil Procedure and the Local Civil Rules; this includes the requirement to <u>attach a copy of the proposed amended pleading</u> as well as the requirement to confer with opposing counsel.  Should Plaintiff choose to

file a motion for leave to amend he must do so **within 30 days from the date of this**
**Order**.

Finally, the Court reminds Plaintiff's counsel of their prior failure to sign court filed documents in this case.  This is not an insignificant omission, particularly by a litigant represented by counsel.  The Court will not indulge any continued failures to comply with the applicable Federal and Local Civil Rules, and any future documents which are deficient will be unfiled without any additional notice.

**SO ORDERED.**

Signed June 8th, 2021.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE

ORDER – PAGE 41